LEWIS PUB. CO. v. WYMAN.

(Circuit Court, E. D. Missouri, E. D. April 3, 1909.)

No. 5,417.

1. EQUITY (§ 212*)—PLEADING—REPLICATION.

Under equity rule 66, the interposition of a general replication is taken as denying every allegation in the answer or plea not responsive to the bill, and these allegations must be proved by the party making them.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 485; Dec. Dig. § 212.*]

2. INJUNCTION (§ 163*)—GROUNDS FOR VACATING—CHANGE OF CONDITIONS.

Where a temporary injunction has been granted, but before final hearing the cause for which it was granted has been removed, it will not be continued or made perpetual.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 366; Dec. Dig. § 163.*]

3. EQUITY (§ 427*)—SCOPE OF RELIEF—CONFORMITY TO BILL.

While, under a prayer for general relief, a court of equity may grant a relief not specifically prayed for, such relief must be within the case made by the bill.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 1012; Dec. Dig. § 427.*]

4. INJUNCTION (§ 163*)—VACATING.

A bill to enjoin a postmaster from refusing to admit a magazine published by complainant to the mails at second-class rates, in consequence of the alleged illegal action of the Post Office Department in revoking the privilege previously granted to such magazine, and to determine the number of copies complainant is entitled to send at such rates, will not be entertained where, pending the suit, the department has granted a new permit, although it limits the number of copies to a smaller number than the bill alleges that complainant was entitled to send when it was filed, since such action leaves no ground for the granting of relief within the allegations of the bill or within the jurisdiction of a court of equity.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 366; Dec. Dig. § 163.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. EQUITY (§ 41\*)—JURISDICTION—RETENTION OF JURISDICTION ACQUIRED.**

The general rule that a court of equity which has once obtained jurisdiction will retain it for all purposes applies only when that part of the cause which gave the court jurisdiction is sustained, and not when it fails.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 116–118; Dec. Dig. § 41.\*]

In Equity.

As, in the opinion filed on the hearing for the temporary injunction in this cause, a full statement of the material allegations in the bill is set out (152 Fed. 787), it is unnecessary to insert it here. A temporary injunction was granted at that time against the exclusion of the number of copies found by the Postmaster General to cover the bona fide circulation of the Journal, and a like number of sample copies, for the reason that the action of the Post Office Department in withdrawing the second-class mail rate privilege was without a hearing, in violation of the provisions of the act of Congress approved March 3, 1901, c. 851, 31 Stat. 1107 (U. S. Comp. St. 1901, p. 2655). The temporary injunction was granted upon condition that complainant file a bond in a sum fixed by the court to pay all damages sustained by the defendant if, upon final hearing, the temporary injunction is found to have been improvidently granted. Defendant declining to give such bond, the temporary injunction was never carried into effect. Thereafter the defendant filed an answer which, so far as it is material to a determination of this cause, denies that the Woman's Farm Journal, which, for convenience, will be referred to herein as the "Journal," had a legitimate list of subscribers, but that it was designed to be used by complainant primarily for advertising purposes and for a circulation at nominal rates; it denied that the bona fide legitimate subscriptions of the Journal were at least 315,000 copies, or that the number of copies thereof which complainant was entitled to mail at the St. Louis post office under the second-class permit or privilege is twice that number, and it charges that before the filing of the bill herein that privilege had been revoked by the Postmaster General, and therefore denies that at the time the bill was filed complainant enjoyed or possessed any privilege whatever to have the Journal carried in the mails of the United States at second-class rates. Thereafter, by leave of the court, defendant filed a supplemental plea in which he alleges that on October 5, 1907, since the filing of the answer, complainant applied to the Postmaster General for the readmission of the Journal to the United States mails at the second-class or pound rate of postage, and that thereafter the said Postmaster General ordered that said publication be admitted to the mails of the United States at the second-class or pound rate of postage, said order to take effect as of the 5th day of October, 1907, and that by virtue of said order the defendant, as postmaster of the city of St. Louis, Mo., has admitted the said publication ever since, and it is now being received and carried by the said Post Office Department of the United States at said second-class or pound rate of postage. The complainant filed a general replication to the answer and plea, and proofs were taken by the parties. The final hearing was had on the entire case.

Barclay & Fountelroy, for complainant.

Chester H. Krum, H. W. Blodgett, U. S. Atty., and T. P. Young, Asst. U. S. Atty., for defendant.

TRIEBER, District Judge (after stating the facts as above). Equity rule 66, in force since the promulgation of the equity rules by the Supreme Court in 1842, dispenses with special replications and only requires a general replication. By reason thereof the interposition of a general replication is taken as denying every allegation in the answer or plea not responsive to the bill, and these allegations must be proved by the party making them. Humes v. Scruggs, 94 U. S. 22, 24 L. Ed. 51.

The truth of the plea is fully established, not only by the production of the order of the Third Assistant Postmaster General to the defendant, the postmaster at St. Louis, but also by the testimony of Mr. Lewis, the president of complainant. This being the case, the question to be determined is whether the plea should be sustained, and thereby abate this action. The object of the bill, as shown by the allegations as well as the prayer for relief, is twofold: First, to enjoin the defendant, as postmaster of the city of St. Louis, from refusing transmission through the mails of the United States of the Journal at second-class pound rates theretofore accorded to it, and annulled by the Postmaster General without a hearing, in violation of the act of March 3, 1901, c. 851, 31 Stat. 1107 (U. S. Comp. St. 1901, p. 2655); and, second, to restrain him from limiting the number of publications to be thus transmitted to less than 600,000 copies, and—

"to that end the court ascertain and adjudge by its decree herein the amount of the legitimate subscription list of said Woman's Farm Journal as of March 1, 1907, and for prior months since September 1, 1905, to the end that there may be a close of the unseemly controversy raised by said defendant to limit and restrict unlawfully the full use and enjoyment by your orator of its rights to said second-class postal privilege under the postal laws of the United States, and that the said defendant, as postmaster, be perpetually enjoined from interfering with the full use and enjoyment of said second-class privilege by your orator according to the finding and decree of this court ascertaining the proper and just extent and limits thereof as herein explained."

The principle is well established that courts will not proceed to adjudication where there is no subject-matter upon which the judgment of the court can operate. The reason for this rule is that the courts are not open for decisions on merely moot questions, but only for decisions of actual controversies between the parties. Marye v. Parsons, 114 U. S. 325, 330, 5 Sup. Ct. 932, 29 L. Ed. 205; In re Baez, 177 U. S. 378, 20 Sup. Ct. 673, 44 L. Ed. 813; Williams v. Hagood, 98 U. S. 72, 75, 25 L. Ed. 51; Hunnewell v. Cass County, 22 Wall. 464, 478, 22 L. Ed. 752; Meyer v. Pritchard, 131 U. S. ccix, Appx., 23 L. Ed. 961; Singer Mfg. Co. v. Wright, 141 U. S. 696, 700, 12 Sup. Ct. 103, 35 L. Ed. 906; May v. May, 167 U. S. 310, 323, 17 Sup. Ct. 824, 42 L. Ed. 179; Bonner v. Terre Haute I. R. R. Co., 151 Fed. 985, 81 C. C. A. 476.

The same rule also applies to cases in which the questions involved became moot questions after final decree in the trial court, and while pending on appeal in the appellate tribunal. San Mateo Co. v. Sou. Pacific R. R., 116 U. S. 138, 6 Sup. Ct. 317, 29 L. Ed. 589; Little v. Bowers, 134 U. S. 547, 10 Sup. Ct. 620, 33 L. Ed. 1016; California v. San Pablo T. R. R. Co., 149 U. S. 308, 13 Sup. Ct. 876, 37 L. Ed. 747; Mills v. Green, 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293; New Orleans Flour Inspectors v. Glover, 160 U. S. 170, 16 Sup. Ct. 321, 40 L. Ed. 382; Kimball v. Kimball, 174 U. S. 158, 19 Sup. Ct. 639, 45 L. Ed. 932; Jones v. Montague, 194 U. S. 147, 24 Sup. Ct. 611, 48 L. Ed. 913; American Book Co. v. Kansas, 193 U. S. 49, 24 Sup. Ct. 397, 48 L. Ed. 613; In re Lincoln, 202 U. S. 178, 26 Sup. Ct. 602, 50 L. Ed. 984; Fisher v. Baker, 203 U. S. 174, 27 Sup. Ct. 135, 51 L. Ed. 142; Fisher v. Cushman, 103 Fed. 860, 43 C. C. A. 381, 51 L. R. A. 292.

In Texas & Pacific R. R. Co. v. Interstate Transportation Co., 155 U. S. 585, 589, 15 Sup. Ct. 228, 39 L. Ed. 271, it was held, where the

exigency existing at the time of the filing of the bill, which was made the principal foundation of the bill, has since passed away, an injunction will be refused.

And where a temporary injunction has been granted, but before final hearing the act enjoined has been legalized, or the grounds on which it was first granted no longer exist, the injunction will be dissolved. Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 421, 15 L. Ed. 435; Baird v. Shore Line, 6 Blatchf. 461, Fed. Cas. No. 759; In re Jackson (D. C.) 9 Fed. 493; Fulton v. Greacen, 44 N. J. Eq. 143, 15 Atl. 827.

In Lockwood v. Wickes, 75 Fed. 118, 123, 21 C. C. A. 257, 262, it was held, Judge Thayer delivering the opinion of the court, that an appeal in a patent case from an order granting a temporary injunction must be dismissed if, pending the appeal, the patent has expired. And it has been uniformly held that an action against an official for a mandatory injunction abates by his resignation of office. United States v. Boutwell, 17 Wall. 604, 609, 21 L. Ed. 721; Warner Valley Stock Co. v. Smith, 165 U. S. 28, 17 Sup. Ct. 225, 41 L. Ed. 621; United States v. Butterworth, 169 U. S. 600, 18 Sup. Ct. 441, 42 L. Ed. 873.

An examination of these cases will show how strictly this rule is adhered to in all cases. Applying it to the first cause for which relief is prayed, it clearly must be denied. By the order of the Post Office Department made to the postmaster at St. Louis on January 7, 1908, and notice whereof was at the time telegraphed by the Post Office Department to the complainant, the Journal was admitted to the second-class mail privilege as of October 5, 1907, and, in the language of the order—

"to hereafter admit to the mails at the rate of postage established by the statutes for mail matter of the second class all copies thereof which conform to the requirement of the law governing mailable matter of the second class. See Act of March 3, 1879."

It is conceded that ever since then, and at the present time, the defendant postmaster is admitting the Journal to the mails at second-class rates of postage. How, then, can the court enjoin him from refusing to do what it is admitted he is not now doing, refusing to admit the Journal at second-class rates? It would be a useless decree so far as the rights of complainant are affected, and to merely determine a question which, in so far as the parties to this action are concerned, is a moot one, and not an actual controversy. As stated in Spelling on Injunctions, vol. 2, § 1052:

"Even when a temporary injunction has been granted, when the cause for which it has been granted has been removed, a court of equity will not continue or make it perpetual, and when the reasons for granting it have ceased to exist a temporary injunction may be vacated on motion."

As to the second object for relief of the bill, it is claimed on behalf of complainant that the order of the Post Office Department now in force limits the number of copies to be admitted at that rate to 100,214, which is declared by the order to be—

"the legitimate list of subscribers prior to January 1, 1908, and an equal number of sample copies, making the total number of copies permitted to be mailed at the pound rate 200,428 monthly."

This, it is urged, is depriving complainant of a valuable right, not because it is claimed that the bona fide circulation of the Journal at the present time is greater than that determined by the Post Office Department and permitted to be carried at the pound rate, but that at the time this bill was filed, and for several months prior thereto, the bona fide subscriptions of the Journal were much greater than the number it was permitted to mail at the one cent per pound rate, and that neither the Postmaster General nor any of his subordinates in the department have a right to limit the number of copies a publisher of a publication accorded the second-class rate privilege can send through the mails when the privilege of the second-class rate is once accorded, and cannot be annulled until after a hearing given to the publisher.

It is unnecessary to cite authorities to the proposition that a suitor in equity cannot, at a final hearing, claim any greater right than is asked in the bill. Nor is there room for any doubt on the proposition that a party is bound by the allegations in his bill. Hayward v. National Bank, 96 U. S. 611, 24 L. Ed. 855. It is true that under the prayer for general relief the court may frequently grant a relief not specifically prayed for, but in order to do so the decree must not give relief outside of the case made by the bill, but only such as is agreeable to the allegations therein stated. · This is all that is decided in Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340, 36 L. Ed. 82, and Lockhart v. Leeds, 195 U. S. 427, 25 Sup. Ct. 76, 49 L. Ed. 263, relied on by learned counsel for the complainant. In the last-cited case the court expressly held that the averments in the bill were sufficient to justify the relief complainant insisted on. The court said:

"We agree that the relief granted under the prayer for general relief must be agreeable to the case made by the bill, and that, in substance, is what is held by the above cases. The case made by the bill consists of the material facts therein stated; and where all the facts are stated, it is no reason for denying relief under a general prayer because it may differ from the theory of the law upon which the special prayer for relief is based, where both prayers are based upon the same facts, clearly set forth in the bill." 195 U. S. 437, 25 Sup. Ct. 79 (49 L. Ed. 263).

It is equally well settled that courts will not listen to an objection by a party whose rights are not affected by the particular case on trial, and who has, therefore, no interest in question. This applies even to statutes. Supervisors v. Stanley, 105 U. S. 305, 311, 26 L. Ed. 1044; In re Garnett, 141 U. S. 1, 12, 11 Sup. Ct. 840, 35 L. Ed. 631; Clark v. Kansas City, 176 U. S. 114, 118, 20 Sup. Ct. 284, 44 L. Ed. 392; Patterson v. Bark Eudora, 190 U. S. 169, 176, 23 Sup. Ct. 821, 47 L. Ed. 1002; Missouri v. Dockery, 191 U. S. 170, 24 Sup. Ct. 53, 48 L. Ed. 133.

Even a decree, when broader than the case as stated in the bill, will be treated as granting only the relief asked for in the bill, and nothing more. Conway v. Taylor, 1 Black, 603, 632, 17 L. Ed. 191; Sailors' Union v. Hammond Lumber Co., 156 Fed. 450, 85 C. C. A. 16. In New York, N. H. & H. R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 404, 26 Sup. Ct. 272, 50 L. Ed. 515, it was held that, while a carrier adjudged to have violated the act to regulate commerce in a specific particular may be restrained from further violations of

that act, it cannot be enjoined in general terms from violating the act in future in any other particular.

To determine the number of subscribers the Journal had at the time and prior to the institution of this suit, would clearly be deciding a moot question in so far as the parties to this case are now concerned. A reference to the bill shows that nowhere is the power of the Postmaster General to limit the number of copies to be sent through the mails at the second-class pound rate to actual subscribers, and an equal number of sample copies, questioned. On the contrary, the entire bill is framed on the theory that that power exists, and the object of that part of the bill is to review the findings of the department as to the number of bona fide subscribers, which it is claimed is erroneous and too small. All the evidence of complainant is directed to that issue. The bill charges:

"Your orator further avers that he has, and for many months last past has had, a legitimate list of subscribers to the Woman's Farm Journal exceeding in number 320,000, and that the attempt of said defendant to prevent or forbid the circulation by mail from the St. Louis, Mo., post office of copies of said Journal within the limit of 640,000 monthly, is in violation of the rights of your orator and the postal laws of the United States."

Assuming that the contention of complainant that the Postmaster General has no power to limit the number of copies to be sent through the mails at the second-class pound rate is correct, what kind of a decree could the court render which would in any wise give any of the relief within the allegations of the bill, and within the jurisdiction of this court sitting as a court of equity? It cannot require the defendant, as postmaster, to accept a larger number of copies than he does at the present time, for the bill has not been amended to ask for such relief, but is limited to the time the bill was filed; nor is there any proof that at the present time the limitation is unjust or prevents complainant from sending the Journal to all bona fide subscribers and an additional 100 per cent. of sample copies at that rate. For the court to ascertain and adjudge by its decree the amount of the subscribers list of the Journal "as of March 1, 1907, and for prior months since 1905," could serve no useful purpose at the present time. If it is sought to recover the moneys alleged to have been unlawfully collected by the defendant as postmaster for the alleged excess copies, a court of equity is clearly without jurisdiction, and the remedy must be at law. Even in case of fraud or mistake, a court of the United States will not sustain a bill in equity to obtain only a decree for payment of money by way of damages, when the sum due can be recovered at law in an action sounding of tort or for money had and received. Buzard v. Houston, 119 U. S. 347, 352, 7 Sup. Ct. 249, 30 L. Ed. 451; Kramer v. Cohn, 119 U. S. 355, 7 Sup. Ct. 277, 30 L. Ed. 439; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; Ambler v. Choteau, 107 U. S. 586, 1 Sup. Ct. 556, 27 L. Ed. 322; Parkersburg v. Brown, 106 U. S. 487, 500, 1 Sup. Ct. 442, 27 L. Ed. 238.

Nor does the general rule that a court of equity, having once obtained jurisdiction, will retain it for all purposes, apply. That rule only applies when that part of the cause which gave the court of equity jurisdiction is sustained, and not when it fails. In such case the rule is

that where a cause of action cognizable at law is entertained in equity on the ground of some equitable relief sought by the bill which it creates, but which cannot, for defect of proof or other reason, be granted, the court is without jurisdiction to proceed further, and should dismiss the bill without prejudice. Russell v. Clark, 7 Cranch, 69, 3 L. Ed. 271; Mitchell v. Dowell, 105 U. S. 430, 26 L. Ed. 1142; Kramer v. Cohn, supra; Kessler v. Ensley Co. (C. C.) 123 Fed. 546, 567; Dakin v. Railway Co. (C. C.) 5 Fed. 665; Cumberland B. & L. Ass'n v. Sparks (C. C.) 106 Fed. 101. To recover such illegal exactions, the common-law courts afford a complete and adequate remedy, and whenever that is the case the plaintiff must proceed at law (section 723, Rev. St. [U. S. Comp. St. 1901, p. 583]), and also for the reason that the defendant has a constitutional right to a trial by jury which he could not obtain in equity. Hipp v. Babin, 19 How. 271, 278, 15 L. Ed. 633; Insurance Co. v. Bailey, 13 Wall. 616, 621, 20 L. Ed. 501; Grand Chute v. Winegar, 15 Wall. 373, 375, 21 L. Ed. 174; Lewis v. Cocks, 23 Wall. 466, 470, 23 L. Ed. 70; Root v. Railway Co., 105 U. S. 189, 212, 26 L. Ed. 975; Killian v. Ebbinghaus, 110 U. S. 568, 573, 4 Sup. Ct. 232, 28 L. Ed. 246; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; Scott v. Neely, 140 U. S. 106, 110, 11 Sup. Ct. 712, 35 L. Ed. 358.

The able and learned argument of counsel for complainant that the Postmaster General does not possess the power of limiting the number of sample copies to be sent at the pound rate as second-class matter, for the reason that Congress has not granted him authority to do so, cannot be determined in this cause, as there is no such issue raised by the pleadings, and there is nothing to indicate that at this time complainant's rights are in any wise injuriously affected by the regulation of the department. That "there may be a close of the unseemly controversy raised by said defendant, and by those who have conspired and confederated with him in that behalf," etc., as stated in the bill of complaint, may be commendable, but in the language of Mr. Justice Grier in Cross v. Del Valle, 1 Wall. 1, 16, 17 L. Ed. 515, "the court has no power to decree in thesi, as to the future rights of parties."

The bill will be dismissed, but in order that plaintiff may not be deprived of instituting any other proceedings either at law or in equity, if so advised, the dismissal will be without prejudice.